IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| JOSHUA PASS | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-00021-DC-DF |
| | § | |
| ALLIED PROPERTY AND CASUALTY | § | |
| INSURANCE COMPANY | § | |
| *Defendant.* | § | |

## DEFENDANT ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY'S FIRST AMENDED ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

Pursuant to this Court's Order to replead (Doc. No. 3), Defendant Allied Property and Casualty Insurance Company ("Allied") files this First Amended Answer and Defenses to Plaintiff Joshua Pass's ("Plaintiff") Original Petition (Doc. No. 1-1) and would respectfully show as follows:

## I.    DEFENDANT ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY'S FIRST AMENDED ANSWER TO PLAINTIFF'S ORIGINAL PETITION

Allied makes the following admissions and denials to Plaintiff's claims as asserted in his Original Petition:

### PARTIES

1.    Upon information and belief, Allied admits the allegations in Paragraph 1 of Plaintiff's Original Petition.

2.    Allied admits the allegations in Paragraph 2 of Plaintiff's Original Petition.

**DISCOVERY LEVEL**

3.     Allied denies that discovery in this case should be conducted under the Texas Rules of Civil Procedure. Discovery should be conducted pursuant to the Federal Rules of Civil Procedure and this Court's scheduling order.

**JURISDICTION**

4.     Paragraph 4 of Plaintiff's Original Petition addresses subject matter jurisdiction in Texas state court and does not require a response from Allied. To the extent a response is required, Allied admits that the United States District Court for the Western District of Texas, Pecos Division has diversity jurisdiction over this case. Answering further, Allied denies that Plaintiff is entitled to the damages and relief sought in this case.

5.     Paragraph 5 of Plaintiff's Original Petition addresses personal jurisdiction over Allied in Texas state court and does not require a response from Allied. To the extent a response is required, Allied admits that the United States District Court for the Western District of Texas, Pecos Division has jurisdiction over it in this case.

**VENUE**

6.     Paragraph 6 of Plaintiff's Original Petition addresses venue in Texas state court and does not require a response from Allied. To the extent a response is required, Allied admits that venue is proper in the United States District Court for the Western District of Texas, Pecos Division.

**FACTS**

7.     Allied admits it issued a Homeowners Policy to Plaintiff bearing policy number 78 42 HR 037965, which provided insurance for the property located at 601 N. Thomson Street, Fort

Stockton, Texas 79735-4848 for the policy period March 19, 2022 to March 19, 2023 (the "Policy"), and subject to the terms, conditions, and exclusions of that Policy.

8.      Upon information and belief, Allied admits Plaintiff owns the property at 601 North Thomson Street, Fort Stockton, TX 79735 (the "Property"), which was insured under the Policy, subject to the terms, conditions, and exclusions of that Policy.

9.      Allied admits that Plaintiff alleges that a hail event on or about October 10, 2022 damaged the Property. Allied admits that hail and wind are covered losses under the Policy, but denies that the Property sustained damage solely resulting from covered causes of loss. Allied denies the remaining allegations in Paragraph 9 of Plaintiff's Original Petition.

10.     Allied admits Plaintiff reported an insurance claim to Allied for alleged wind and hail damage to the Property occurring on or about October 10, 2022 to which Allied assigned claim number Claim No. 853910-GN (the "Claim). Allied admits that Plaintiff sought replacement of the roof of the Property in the Claim. Allied denies the remaining allegations in Paragraph 10 of Plaintiff's Original Petition.

11.     Allied admits that it assigned Samuel Ozenghar ("Ozenghar") to adjust the Claim. Allied admits that Ozenghar prepared an estimate totaling replacement cost value $92,413.85 / actual cash value $78,397.31. After application of the Policy's $4,340 deductible, Allied issued payment for covered damages to Plaintiff totaling $74,057.31 on November 22, 2022. Allied denies the remaining allegations in Paragraph 11 of Plaintiff's Original Petition.

12.     Allied admits that Plaintiff hired King Adjusting Services, LLC as his public insurance adjuster for representation in the Claim. Allied admits that King Adjusting Services, LLC wrote an estimate totaling $236,922.76 which included damages to the roof system and

elevations, garages and interior of the Property. Allied denies the remaining allegations in Paragraph 12 of Plaintiff's Original Petition.

13.    Allied admits it reassigned the adjustment of the Claim to Nanna Deljkic on or about April 26, 2023. Allied admits that after reviewing a supplemental estimate from Plaintiff's public adjuster, Allied revised its estimate, which totaled replacement cost value $121,423.68 / actual cash value $104,726.50, and resulted in an additional payment to Plaintiff for the actual cash value of covered damages in the amount of $26,250.75 on May 9, 2023. Allied further admits that, based on Plaintiff's public adjuster's continued disagreement over the cause and scope of damages, Allied continued its investigation of the Claim by hiring Donan Engineering Co. to assess the Property. Following Donan Engineering Co.'s reinspection and report, Allied prepared a supplemental estimate which totaled replacement cost value $144,105.02 / actual cash value $121,064.26, and resulted in a supplemental payment for covered damages to Plaintiff totaling $16,337.76 on August 22, 2023. Allied denies the remaining allegations in Paragraph 13 of Plaintiff's Original Petition.

14.    Allied admits that its last estimate prepared prior to Plaintiff filing suit totaled replacement cost value $210,057.21 / actual cash value $182,337.38, and resulted in a total payment on the Claim for covered damages in the amount of $178,689.54 after application of the deductible. Allied denies the remaining allegations in Paragraph 14 of Plaintiff's Original Petition.

15.    Allied denies the allegations in Paragraph 15 of Plaintiff's Original Petition.

16.    Allied denies the allegations in Paragraph 16 of Plaintiff's Original Petition.

17.    Allied denies the allegations in Paragraph 17 of Plaintiff's Original Petition.

18.    Allied denies the allegations in Paragraph 18 of Plaintiff's Original Petition.

19.    Allied denies the allegations in Paragraph 19 of Plaintiff's Original Petition.

20.     Allied denies the allegations in Paragraph 20 of Plaintiff's Original Petition.

21.     Allied denies the allegations in Paragraph 21 of Plaintiff's Original Petition.

22.     Allied denies the allegations in Paragraph 22 of Plaintiff's Original Petition.

23.     Allied denies the allegations in Paragraph 23 of Plaintiff's Original Petition.

24.     Allied denies the allegations in Paragraph 24 of Plaintiff's Original Petition.

25.     Allied denies the allegations in Paragraph 25 of Plaintiff's Original Petition.

26.     Allied denies the allegations in Paragraph 26 of Plaintiff's Original Petition.

27.     Allied denies the allegations in Paragraph 27 of Plaintiff's Original Petition.

28.     Allied denies the allegations in Paragraph 28 of Plaintiff's Original Petition.

29.     Allied denies the allegations in Paragraph 29 of Plaintiff's Original Petition.

30.     Allied denies the allegations in Paragraph 30 of Plaintiff's Original Petition.

31.     Allied denies the allegations in Paragraph 31 of Plaintiff's Original Petition

32.     Allied denies the allegations in Paragraph 32 of Plaintiff's Original Petition.

## CAUSES OF ACTION

33.     Paragraph 33 of Plaintiff's Original Petition incorporates the foregoing paragraphs by reference and does not require a response by Allied. To the extent that a response is required, Allied reasserts its admissions and denials set forth in the foregoing paragraphs of this Answer.

**I.      Causes of Action Against Allied**

34.     Allied denies the allegations in Paragraph 34 of Plaintiff's Original Petition.

**A.      Breach of Contract**

35.     Allied denies the allegations in Paragraph 35 of Plaintiff's Original Petition.

**B.      Noncompliance with Texas Insurance Code: Unfair Settlement Practices**

36.     Allied denies the allegations in Paragraph 36 of Plaintiff's Original Petition.

37.     Allied denies the allegations in Paragraph 37 of Plaintiff's Original Petition.

38.     Allied denies the allegations in Paragraph 38 of Plaintiff's Original Petition.

39.     Allied denies the allegations in Paragraph 39 of Plaintiff's Original Petition.

40.     Allied denies the allegations in Paragraph 40 of Plaintiff's Original Petition.

41.     Allied denies the allegations in Paragraph 41 of Plaintiff's Original Petition.

      **C.**      **Noncompliance with Texas Insurance Code: Prompt Payment of Claims Statute**

42.     Allied denies the allegations in Paragraph 42 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to recover the relief and damages sought in paragraph 42 of Plaintiff's Original Petition.

43.     Allied denies the allegations in Paragraph 43 of Plaintiff's Original Petition.

44.     Allied denies the allegations in Paragraph 44 of Plaintiff's Original Petition.

45.     Allied denies the allegations in Paragraph 45 of Plaintiff's Original Petition.

      **D.**      **Breach of the Duty of Good Faith and Fair Dealing**

46.     Allied denies the allegations in Paragraph 46 of Plaintiff's Original Petition.

      **E.**      **Knowledge.**

47.     Allied denies the allegations in Paragraph 47 of Plaintiff's Original Petition.

<strong>RULE 193.7 NOTICE</strong>

48.     Paragraph 48 of Plaintiff's Original Petition involves production requirements under the Texas Rules of Civil Procedure and does not require a response from Allied. To the extent a response is required, Allied denies that the Texas Rules of Civil Procedure apply and submit that this case is governed by the Federal Rules of Civil Procedure.

## DAMAGES

49.     Allied denies the allegations in Paragraph 49 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in Paragraph 49 of Plaintiff's Original Petition.

50.     Allied denies the allegations in Paragraph 50 of Plaintiff's Original Petition.  Allied denies that Plaintiff is entitled to the relief sought in Paragraph 50 of Plaintiff's Original Petition.

51.     Allied denies the allegations in Paragraph 51 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in Paragraph 51 of Plaintiff's Original Petition.

52.     Allied denies the allegations in Paragraph 52 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in Paragraph 52 of Plaintiff's Original Petition.

53.     Allied denies the allegations in Paragraph 53 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in Paragraph 53 of Plaintiff's Original Petition.

54.     Allied denies the allegations in Paragraph 54 of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in Paragraph 54 of Plaintiff's Original Petition.

55.     Allied denies the allegations in Paragraph 55 of Plaintiff's Original Petition.  Allied denies that Plaintiff is entitled to the relief sought in Paragraph 55 of Plaintiff's Original Petition.

## JURY DEMAND

56.     Paragraph 56 of Plaintiff's Original Petition is a jury demand and does not require a response from Allied.

## PRAYER

57.     Allied denies the allegations set forth in the Prayer of Plaintiff's Original Petition. Allied denies that Plaintiff is entitled to the relief sought in the Prayer of Plaintiff's Original Petition.

## II.  DEFENDANT ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY'S DEFENSES TO PLAINTIFF'S ORIGINAL PETITION

58.     In addition to the foregoing specific denials, Allied asserts, without limitation, the following defenses:

### First Defense
### Policy Provisions

59.     Plaintiff cannot recover, in whole or in part, on his breach of contract claim, and consequently on any of the other causes of action alleged in his Original Petition, because the insurance policy issued by Allied to Plaintiff contains exclusions and provisions negating coverage, in whole or in part, for the damages alleged by Plaintiff. Allied's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy and Allied relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it.

HOMEOWNER POLICY
DECLARATIONS

\*\*\*

**Policy Number:**                          **Policyholder:**
78 42 HR 037965                          **(Named Insured)**
                                         Joshua Pass

\*\*\*

**Policy Period From:**
MAR 19, 2022 to MAR 19, 2023…
\*\*\*
**Residences Premises Information:**
601 N Thomson St
Fort Stockton
TX 79735-4848
\*\*\*
**SECTION I**

| Property Coverages | Limits Of Liability | Deductible: 1% of Cov A All Peril |
|---|---|---|
| COVERAGE-A-DWELLING | $434,000 | |
| COVERAGE-B-OTHER STRUCTURES | $114,566 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-C-PERSONAL PROPERTY | $325,500 | |
| COVERAGE-D-LOSS OF USE | ALS* | |

*ACTUAL LOSS SUSTAINED PAYMENT NOT TO EXCEED 24 MONTHS

| EXCEPTIONS |
| --- |
| 1.0% OF COVERAGE A – DWELLING LIMIT ($4,340 AS OF THE CURRENT DECLARATIONS ISSUED DATE) ALL PERILS |

**OTHER COVERAGES APPLICABLE**

| **Other Coverages** | **Limits of Liability** |
| --- | --- |
| *** | |
| Biological Deterioration or Damage | $10,000 |
| *** | |
| Building Ordinance or Law | 25% |
| Dwelling Replacement Cost – 150% | Applies |
| *** | |

**Issued By:** ALLIED P&C INSURANCE COMPANY
***

**AGREEMENT**

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premiums and fees, and compliance with all applicable provisions of this policy.
***

**SECTION I – PROPERTY COVERAGES**

**A. Coverage A – Dwelling**

  **1.** We cover:

   **a.** The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

  **2.** We do not cover land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land.

**B. Coverage B – Other Structures**

  **1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line or similar connection.

  **2.** We do not cover:

   **a.** Land, including land on which the dwelling is located, or the replacement, rebuilding, restoration, stabilization or value of such land.

***

**E. Additional Coverages**

These additional coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

  ***

  **2. Reasonable Repairs**

**a.** We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

**b.** If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

**(1)** Increase the limit of liability that applies to the covered property; or

**(2)** Relieve you of your duties, in case of a loss to covered property, described in **C.4** under Section **I** – Conditions.

**\*\*\***

**7. Loss Assessment**

**a.** We will pay up to the Loss Assessment coverage limit shown on the Declarations for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**\*\*\***

**c.** Paragraph **Q.** Policy Period under Section I – Conditions does not apply to this coverage.

**\*\*\***

**11. Ordinance Or Law**

**a.** The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the limit of liability that applies to Coverage **A** – Dwelling and provides coverage for the increased costs of construction you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against.

**\*\*\***

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law;

**\*\*\***

**\*\*\***

## SECTION I – PERILS INSURED AGAINST

### A. Coverage A – Dwelling and Coverage B – Other Structures

**1.** We insure against direct physical loss to property described in Coverages **A** and **B**.

**2.** We do not insure, however, for loss:

**a.** Excluded under Section I – Exclusions;

**b.** Involving collapse, including any of the following conditions of property or any part of the property:

**(1)** an abrupt falling down or caving in;

**(2)** loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;
except as provided in **E.8.** Collapse under Section I – Property Coverages; or

**c.** Caused by:

\*\*\*

**(5)** Continuous or repeated seepage or leakage of water, steam or moisture, or presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or a household appliance that results in deterioration or rust.

Continuous or repeated seepage or leakage of water from within or around any shower stall, shower tub, tub installation or other plumbing fixture, including its walls, ceilings or floors, is also excluded.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout, or similar fixtures or equipment.

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it do damage or destroy itself;

**(c)** Smoke, rust or other corrosion or dry rot.

\*\*\*

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations walls, floors, roofs, or ceilings;

**(g)** Birds, rodents or insects;

\*\*\*

**(j)** Root growth, movement or action;

**(k)** Mismatch of color between undamaged material and new material used to replace old, weathered or oxidized damaged material;

**(l)** Mismatch between undamaged material and new material used to repair or replace material due to outdated, obsolete or discontinued products.

\*\*\*

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

11

    a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion **A.1.a** does not apply to the amount of coverage that may be provided for in **E.11** Ordinance Or Law under Section **I** – Property Coverages;

       \*\*\*

### 2. Earth Movement

Earth Movement means:

    a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    b. Landslide, mudslide or mudflow;

    c. Subsidence or sinkhole; or

    d. Any other earth movement including earth sinking, rising or shifting.

       \*\*\*

### 3. Water

This means:

    a. . . . surface water . . .

    b. Water which:

        (1) Backs up through sewers or drains from outside the dwelling's plumbing system

        (2) Overflows or is otherwise discharged from a sump pump, related equipment, or other system designed to remove subsurface water from the foundation area.

    c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure;

    d. Waterborne material carried or otherwise moved by any of the water referred to in A.3.a through A.3.d of this exclusion.

This exclusion A.3 applies regardless of whether any of the above in A.3.a through A.3.d. is caused by an act of nature or is otherwise caused.

\*\*\*

### 5. Neglect

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

\*\*\*

### 10. Diminution In Value

Diminution In Value includes, but is not limited to, damages for any perceived or actual reduction in the market value of any property.

### 11. Increased Hazard

Increased Hazard means any loss occurring while hazard is increased by a means within the control and knowledge of an "insured".

\*\*\*

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.** Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.** Faulty, inadequate or defective:

    **a.** Planning, zoning, development, surveying, siting;

    **b.** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction, backfilling;

    **c.** Materials used in repair, construction, renovation or remodeling; or

    **d.** Maintenance;

    of part or all of any property whether on or off the "residence premises".

## SECTION I – CONDITIONS

### A. Insurable Interest and Limit of Liability
[MODIFIED BY ENDORSEMENT]

### B. Deductible
Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**3.** Deductibles may be stated as a specific dollar amount or as a percentage of the limit of liability for the covered property.

### C. Duties After Loss
[MODIFIED BY ENDORSEMENT]

### D. Loss Settlement
In condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance of Law under Section I – Property Coverages. Covered property losses are settled as follows:

\*\*\*

    2. Buildings under Coverage A or B at replacement cost without deduction for depreciation subject to the following:

        a. We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

            (1) The limit of liability under this policy that applies to the building;

            (2) The replacement cost of that part of the building damaged for like construction and use on the same premises; or

            (3) The necessary amount actually spent to repair or replace the damaged building.

     b.   We will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete, unless the cost to repair or replace the damage is both:

        (4)   Less than 5% of the amount of insurance in this policy on the building; and

        (5)   Less than $2,500.

\*\*\*

**F. Appraisal**
[MODIFIED BY ENDORSEMENT]
\*\*\*

**H. Suit Against Us**
[MODIFIED BY ENDORSEMENT]
\*\*\*

**J. Loss Payment**
[MODIFIED BY ENDORSEMENT]
\*\*\*

**Q. Policy Period**
This policy applies only to loss which occurs during the policy period.
\*\*\*

## DWELLING REPLACEMENT COST – 150%

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

If you have:

1. Furnished us accurate information for replacement cost estimation;

2. Insured your dwelling in which you live, located at the "residence premises", to at least 100% of its replacement cost as determined by our replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by us; and

3. Paid the additional premium,

we will settle covered losses to the dwelling in which you live, located at the "residence premises" under Coverage A, up to 150% of the limit of liability shown in the Declarations for Coverage A as follows:

1. We will pay the cost of repair or replacement, after application of deductible, and without deduction for depreciation, but not exceeding the replacement cost of the part of the building damaged, for like construction and use on the same premises.

2. We will pay the "actual cash value" of the damage until repair or replacement is complete.

    You may make an additional claim for payment on a replacement cost basis provided you:

    a.    Notify us within 180 days after the date of loss of your intent to repair or replace the damaged building;

    b.    Complete the repair or replacement within 2 years of the date of the loss; and

    c.    Have not reached the applicable limit of liability under this policy.

Repair or replacement must be evidenced by the original replacement receipt, invoice or bill.

This endorsement does not increase the coverage limit of Coverage B, C, D or any additional coverages or sublimits of the attached policy.

This endorsement applies as stated in the policy Declarations.

This endorsement is issued by the company shown in the Declarations as the issuing company.

\*\*\*

## SPECIAL PROVISIONS – TEXAS

Coverage is subject to all terms and conditions of the policy except as changed by this endorsement.

**DEFINITIONS**

Paragraph **C.1.** "Actual Cash Value" is replaced by the following:

    1. "Actual Cash Value" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for depreciation.

\*\*\*

**SECTION I – EXCLUSIONS**

\*\*\*

**SECTION I – CONDITIONS**

Paragraph **A. Insurable Interest and Limit of Liability** is replaced by the following:

    **A. Insurable Interest And Limit Of Liability**

        **1.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

            a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

        b. For more than the applicable limit of liability

\*\*\*

Paragraph **C. Duties After Loss** is replaced by the following:

**C. Duties After Loss**

    **1. Your Duties After Loss**

    In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage or a representative of either:

        **a.** Give prompt notice to us or our agent. . . .

        \*\*\*

        **d.** Protect the property from further damage. If repairs to the property are required, you must:

            **(1)** Make reasonable and necessary repairs to protect the property; and

            **(2)** Keep an accurate record or repair expenses;

        **e.** Cooperate with us in the investigation of a claim;

        \*\*\*

        **g.** As often as we reasonably require:

            **(1)** Show the damaged property;

            **(2)** Provided us with records and documents we request and permit us to makes copies; and

            **(3)** Submit to examination under oath, while not in the presence of another "insured", and sign the same. A parent or guardian may be present with a minor during any interview or examination;

\*\*\*

Paragraph **F. Appraisal** is replaced by the following:

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the judicial district or county where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed by any two will set the amount of loss.

Each party will:
**1.** Pay its own appraiser; and
**2.** Bear the other expenses of the appraisal and umpire equally, except that any fees for expert witnesses or attorneys will be paid by the party who hires them.

Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.
This is not a provision providing for or requiring arbitration.

The appraisers and umpire are only authorized to determine the "actual cash value", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

Paragraph **H. Suit Against Us** is replaced by the following:
**H. Suit Against Us**
    **1.** Except as provided in Paragraph **2.**, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy. Action must be brought against us within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.
**\*\*\***
Paragraph **J. Loss Payment** is replaced by the following:
**J. Loss Payment**
We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. . . .

60.     The assertion of any specific provision of the Policy in this Answer is not intended as a waiver or abandonment of other applicable provisions of the Policy. The Policy in its entirety is asserted and incorporated herein by reference.

**Second Defense**
**Failure of Conditions Precedent**

61.     Plaintiff has failed to comply with one or more provisions of the Policy and, therefore, is precluded from bringing suit to enforce the Policy. The Policy expressly states:

**1.** Except as provided in Paragraph **2.**, no suit or action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy. Action must be brought against us within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

62.     Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing suit against Allied.

**Third Defense**
**Failure to Mitigate/Contribution**

63.     Plaintiff is barred from any recovery from Allied, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages and his contribution to his own alleged damages.

**Fourth Defense**
**No Breach of Policy**

64.     Plaintiff's claim has been properly investigated, adjusted, evaluated, and paid. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including violation(s) of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

**Fifth Defense**
**Lack of Coverage Precludes Extra-Contractual Liability**

65.    The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and the common-law duty of good faith and fair dealing.  Because Plaintiff's allegations are generally based upon Allied's alleged failure to timely pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claims precludes the extra-contractual claims against Allied as a matter of law.

**Sixth Defense**
***Bona Fide* Dispute**

66.    Under Texas law, an insured bringing an action against its insurer for an alleged breach of a duty of good faith and fair dealing, whether under the common law or as authorized by statute, must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, Allied's liability was not "reasonably clear."  In other words, nothing more than a *bona fide* coverage dispute exists between the parties, which does not permit Plaintiff to recover extra-contractual damages in this case.

**Seventh Defense**
**Deductible**

67.    To the extent any additional damage to the covered property is determined by the factfinder to be the result of the weather event as alleged in Plaintiff's Original Petition, which is denied, Plaintiff's recovery is subject to the $4,340 deductible as shown in the Declarations of the Policy.

**Eighth Defense**
**Loss Settlement Provisions**

68.    Allied relies on the loss settlement provisions in the relevant insurance policy limiting loss payments to actual cash value except as stated in the Policy.

**Ninth Defense**
**Limits of Liability**

69.    Any recovery by Plaintiff is subject to the applicable policy limits set forth previously. Additionally, Plaintiff may not recover more than his financial interest in the Property.

**Tenth Defense**
**Due Process and Equal Protection**

70.    To the extent Plaintiff seeks punitive damages, Allied invokes its right under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Allied affirmatively pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

71.    To the extent Plaintiff seeks punitive damages, Allied asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, §§ 13 and 19.

**Eleventh Defense**
**Punitive Damage Limitation**

72.    With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the

amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code §§ 41.002–41.009.

### Twelfth Defense
### Excessive Demand

73.     Allied assert that Plaintiff is not entitled to attorney's fees as Plaintiff has asserted an excessive demand.  Plaintiff has acted unreasonably and in bad faith by demanding monies to which he is not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive. More specifically, in Plaintiff's presuit demand letter dated September 1, 2023, Plaintiff demanded $152,563.80 as "the specific amount owed by the insurer on the claim for damage to or loss of covered property . . . which is inclusive of the attorney fees below and interest at the current rate of 13.25% for 9 months."

### Thirteenth Defense
### Tolling of Penalties

74.     Plaintiff's live pleading seeks recovery of statutory penalties under Chapter 542A of the Texas Insurance Code, which regulates the prompt payment of claims and provides a penalty for proved violations.  Allied denies liability under this statute; however, if upon final hearing and trial, the fact finder determines that there have been violations of this statute, Allied urges the Court to determine that all penalties during any delays attributable to Plaintiff or Plaintiff's attorneys should be tolled.

### Fourteenth Defense
### Proportionate Responsibility

75.     Plaintiff's damages, if any, are the result, in whole or in part, of Plaintiff's own fault, acts and/or omissions, negligence, breach of duty, violation of statute, and/or breach of contract or that of his agents, representatives, or employees. For example, but without limitation,

Plaintiff or Plaintiff's authorized agents or representatives failed to properly maintain the property and failed to repair damages stemming from a prior claim/weather event.

### Fifteenth Defense
### Non-Segregation of Damages

76.    Allied asserts that Plaintiff has failed to segregate damages caused by covered damage to the Property under the Policy and causes of loss to the Property uncovered under the Policy, including but not limited to those damages arising under claim number 522563-GK for hail damage to the Property and arising out of a May 11, 2020 weather event.

### Sixteenth Defense
### Failure to Comply with Notice Requirements of Tex. Ins. Code § 542A.003

77.    Chapter 542A of the Texas Insurance Code applies to Plaintiff's lawsuit as it is an action on a claim under an insurance policy covering real property that arises from alleged wind and/or hailstorm damage.  Plaintiff failed to give proper notice under Tex. Ins. Code § 542A.003, precluding or limiting any right Plaintiff may have to recover attorney's fees.  Specifically, Tex. Ins. Code § 542A.003 requires that Plaintiff provide written notice to Allied not later than the 61st day before the date Plaintiff files an action to which Chapter 542A applies that must include:

(1)    a statement of the acts or omissions giving rise to the claim;

(2)    the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property; and

(3)    the amount of reasonable and necessary attorney's fees incurred by the claimant, calculated by multiplying the number of hours actually worked by the claimant's attorney, as of the date the notice is given and as reflected in contemporaneously kept time records, by an hourly rate that is customary for similar legal services.

78.    Furthermore, if an attorney or other representative gives the notice required under Chapter 542A, the attorney or representative must:

(1)    provide a copy of the notice to the claimant; and

(2)    include in the notice a statement that a copy of the notice was provided to the claimant.

79.    In a letter dated September 1, 2023, Plaintiff's counsel sent a demand letter to Defendant's representative in which Plaintiff demanded $152,563.80 as "the specific amount owed by the insurer on the claim for damage to or loss of covered property . . . which is inclusive of the attorney fees below and interest at the current rate of 13.25% for 9 months." Plaintiff's demand does not provide pre-suit notice as required by Tex. Ins. Code § 542A.003 because it fails to state "the specific amount alleged to be owed by the insurer on the claim for damage to or loss of covered property." Accordingly, pursuant to Tex. Ins. Code § 542A.007(d), the Court may not award Plaintiff any attorney's fees incurred after the date Allied filed its original answer asserting this defense (May 2, 2024).

80.    In the alternative, to the extent the demand letter is deemed timely and otherwise in compliance with the pre-suit notice requirements under Chapter 542A, the provisions of § 542A.007(a) and (c) may limit or preclude recovery of attorney's fees based on the excessive amounts demanded by Plaintiff.

### Seventeenth Defense
### Offset/Credit

81.    Plaintiff's damages, if any, must be offset by the $4,340 Policy deductible, as well as a credit for indemnity amounts previously paid to or on behalf of Plaintiff for covered damages to the Property totaling $178,689.54.

### Eighteenth Defense
### Payment

82.    Plaintiff's claim has been properly investigated, adjusted, evaluated, and paid. Plaintiff has been reasonably compensated for the damages submitted under the terms of the

Policy. Allied has issued the following payments for covered damages arising out of the Claim, which totals $178,689.54:

- On November 22, 2022, Allied issued Plaintiff payment for covered damages totaling $74,057.31.

- On December 22, 2022, Allied issued Plaintiff payment for covered damages totaling $770.60.

- On May 9, 2023, Allied issued Plaintiff payment for covered damages totaling $26,250.75.

- On August 22, 2023 Allied issued Plaintiff payment for covered damages totaling $16,337.76.

- On October 26, 2023, Allied issued Plaintiff payment for covered damages totaling $61,273.12.

### III.    <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Defendant Allied Property and Casualty Insurance Company respectfully prays that Plaintiff take nothing, that Allied be awarded reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Allied may be justly entitled.

*(Signature on following page.)*

Respectfully submitted,

/s/ Patrick M. Kemp
Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer and Mahoney
100 Congress Avenue, Suite 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this 9th day of May, 2024 to:

Andrew A. Woellner
Woellner Law Group
1717 W. 34th St., Suite 600-186
Houston, Texas 77018
andrew@woellnerlaw.com

/s/ Patrick M. Kemp
Patrick M. Kemp